STATE OF IOWA, Appellee, v. ADAM KIEFER, Appellant.

INDICTMENT AND INFORMATION: Amendment — Form — Sub-
1  stance—Ownership of Property—False Pretenses. An indictment may be amended, on motion of the county attorney, so as to sup-ply an allegation of ownership of the property described in the indictment. So held under charge of obtaining property by false pretenses. (Par. 7, Sec. 5289, Sup. Code, 1913.)

CRIMINAL LAW: Trial—Notice of Additional Witnesses—Upon
2  Whom and Where Served. Notice that the state will call wit-nesses other than those whose names are on the indictment may be served on the defendant outside of the county where the in-dictment is pending. (Sec. 5373, Sup. Code, 1913.)

**FALSE PRETENSES:** Allegation and Proof—Misdescription of Property—Variance. Charging that the accused obtained by false pretenses a note given by ''D. B. Stoner'', followed by proof that the note obtained was given by ''D. B. Stoner and Stella Stoner'', presents a fatal variance.

**FALSE PRETENSES:** Essential Principles — Obtaining Mere ''Credit''. To sustain an indictment for ''false pretenses'', it is all-essential that it be shown that title to property, or the possession of property, was obtained by the false pretenses. The crime is not committed if the sole fruit of the rascality is to obtain that intangible thing known in bookkeeping as a ''credit''.

PRINCIPLE APPLIED: One Kiefer, a banker, was accused of obtaining a $700 note and $700 in money by false pretenses. One Stoner had executed to Kiefer two $700 notes. Kiefer had negotiated both of the notes. When maturity day arrived, Stoner had on deposit with Kiefer, and had had for some time, more than enough to pay one of the notes; and, supposing that Kiefer still held the notes, Stoner went to the bank, and it was arranged with defendant that he (Stoner) would pay one note out of his deposit account and would give a new note in renewal of the other note. Stoner gave Kiefer no check. Kiefer simply entered on the bank books a credit of $700. In other words, he charged Stoner's deposit account with $700. Kiefer never took the money from the bank. *Held,* the act of the defendant in obtaining this ''credit'' entry did not constitute the obtaining of *property* by false pretenses, even if he did represent that he still held the notes. (Mark that the obtaining of the note failed to sustain a conviction because of a fatal variance and the obtaining of the ''credit'' entry failed because such entry was not ''property''.)

*Appeal from Buchanan District Court.*—HON. C. W. MULLAN, Judge.

WEDNESDAY, MARCH 17, 1915.

REHEARING DENIED MONDAY, OCTOBER 25, 1915.

THE defendant was convicted of the crime of cheating by false pretenses and appeals.—*Reversed.*

*M. A. Smith* and *Chappell & Todd,* for appellant.

*George Cosson,* Attorney General, *R. J. O'Brien,* County Attorney, *Hasner & Hasner,* and *Wiley S. Rankin,* Special Counsel, for the State.

LADD, J.—I. The accused is charged in the indictment with having obtained, by false pretenses, a promissory note of $700, bearing date February 15, 1913, and due six months after date, executed by D. B. Stoner to the defendant, and $700 in money. The ownership of this property is not alleged save by implication; and, as an indictment cannot be aided by intendment (*State v. Ashpole*, 127 Iowa 680), and ownership must be averred (*State v. Clark*, 141 Iowa 297), the county attorney filed an amendment adding the following:

1. INDICTMENT AND INFORMA-TION: amend-ment: form: substance: ownership of property: false pre-tenses.

"That the money and notes delivered to the said defendant, Adam Kiefer, on or about February 28, 1913, as therein stated, was, at the time of the delivery by said D. B. Stoner to said defendant, Adam Kiefer, the property of said D. B. Stoner."

This was essential to the full description or identification of the offense but not to the substance thereof. The crime would be none the less such were the owner not alleged or ascertained. The purpose of such an allegation is to point out the precise offense, in order (1) that the accused may be advised of the particular charge he must be prepared to meet and (2) that he may thereafter be in a situation to plead the judgment of conviction or acquittal therein in bar to any subsequent prosecution. Sec. 5289, Code Supplement, 1913, expressly authorizes the county attorney to amend the indictment so as to correct errors "in the allegations concerning the ownership of property that may be described in the indictment"; and as such an amendment relates to matter of form and not of substance, the court did not err in permitting the county attorney to supply the omission by averring in an amendment to the indictment, that D. B. Stoner was owner of the property. See *State v. Mullen*, 151 Iowa 392, and *State v. Foxton*, 166 Iowa 181.

II. Notice that evidence would be introduced of witnesses

other than those whose names were endorsed on the back of
the indictment was served on the defendant in Black Hawk

county, and counsel contend that this was
2. CRIMINAL LAW:
trial: notice
of additional
witnesses:
upon whom
and where
served.
not in compliance with Sec. 5373, Code
Supp., 1913, for that, as the indictment was
pending in Buchanan county in his absence,
notice must have been served on his attor-
neys.  That section provides that:

"The county attorney, in offering the evidence in support
of the indictment in the order prescribed in the last section,
shall not be permitted to introduce any witness who was not
examined before a committing magistrate or the grand jury,
and the minutes of whose testimony were not presented with
the indictment to the court, unless he shall have given to the
defendant or his attorney of record, if defendant be not found
in the county, a notice in writing, stating the name, place of
residence, and occupation of such witness, and the substance
of what he expects to prove by him on the trial, at least four
days before the commencement of such trial."

The limitation applies to the attorney of record only;
that is, he may be served only when defendant cannot be
found in the county, but the defendant may be served any-
where.  In order to hold as contended, it would be necessary
to read into the statute, after the word "defendant", the
phrase "when found in the county".  This is not to be implied
from the language employed, as the court rightly held in rul-
ing that the service of the notice was sufficient.

III. The note alleged to have been obtained by false pre-
tenses was described in the indictment as having been given
by D. B. Stoner.  The note introduced in evidence, over

objection, bore the name of Stella Stoner also
3. FALSE PRE-
TENSES: alle-
gation and
proof: mis-
description of
property:
variance.
as maker, and on this ground, the defendant
argues that there was a fatal variance between
the allegations and the proof.  If the vari-
ance is to be regarded as material, the con-
clusion necessarily follows that it was fatal.  On the other

hand, if the description is sufficiently full and definite to identify the transaction and inform the accused of the precise charge against him, a mere technical inaccuracy will not be permitted to defeat the prosecution. *People v. Reed* (Cal.), 11 Pac. 676, is directly in point in declaring that such a variance is fatal, the court saying:

"The indictment or information should set out with reasonable certainty the pretenses and fraudulent representations by which the party injured was defrauded of his property, and such specific description of the property obtained as will identify it, and give to the defendant notice of what he is required to meet. And between the allegations thus made and the proofs there should be such a correspondence that, when the latter are adduced, it can be said that the former are substantially established. In the present case, there was a wide departure from the necessary correspondence between the *allegata* and *probata*. The proofs established another offense, separate and distinct from that charged. The property obtained by the fraudulent practices of defendant was different from that described in the indictment. This difference was so significant that in a civil action it would have been fatal to a recovery."

In *Copeland v. State* (Ala.), 12 So. 181, a contract was alleged to have been made use of to defraud, and to have been signed by J. D. Copeland, when it in fact was made by John D. Copeland and W. F. Copeland, and this was adjudged a fatal variance.

The principle was involved in *State v. Cadwell*, 79 Iowa 473. There the indictment charged that the accused had obtained property by falsely representing that he had money on deposit with a bank and drawing a draft thereon in favor of the person alleged to have been defrauded; but the proof showed that the draft was made by the "Boyer Valley Bank," a partnership composed of the accused and another, that he drew the draft in its name, and that any deposit it had was

in the name of the Boyer Valley Bank and not in that of the accused. The variance was held to defeat conviction.

A different conclusion was reached in *Headly v. State* (Ala.), 17 So. 714, but owing to a statute of that state. A promissory note such as alleged is not identical with that adduced in evidence, and this being so, there was a material variance between the property alleged to have been obtained and that proven, and the court erred in submitting the issue as to whether the promissory note in question was obtained by false pretenses. Any prejudice was obviated, however, by the special findings of the jury that the note was given to defendant for the purpose of taking up another and was used for that purpose.

IV. The remaining inquiry relates to the money of which defendant is accused of having defrauded Stoner. It appears that Stoner and wife executed two notes of $700 each, March 16, 1912, payable six months after date to the defendant Kiefer. On December 31st following, Stoner made a deposit of $692.22 with Kiefer's Savings Bank, which increased the balance in his favor to more than enough to satisfy one of these notes and the interest on both. On February 15, 1913, Stoner and his wife went to the bank and there arranged with defendant to pay the one note from the bank balance and renew the other. Concerning this, Stoner testified:

4. FALSE PRE-
TENSES : es-
sential princi-
ples : obtain-
ing mere
"credit."

"We paid one note and gave a renewal of the other." Q. "How did you pay that?" A. "Well, this money that we left there." Q. "This money that was to your credit in the bank?" A. "Yes, sir." Q. "And gave a renewal note for the other note?" A. "Yes, sir. . . . There was quite a number in the bank and seemed to be very busy and he told me he would look up the papers and get the old papers cancelled and the new one of record and then he would send me the papers. The old papers were also secured by a chattel mortgage. He was to have that mortgage cancelled. He said he would look up the

notes. He did not know just where to put his hands on them. He said he would look them up and send them to me when he got the old papers cancelled and the new ones on record.''

Defendant, who was an officer of the bank, charged the $700 note off Stoner's account, but did not return or surrender it to Stoner, as it had been sold to a bank at Independence; and shortly afterwards, Kiefer's bank went into the hands of a receiver and Kiefer was adjudged a bankrupt. The above amount was never taken from the bank by Kiefer, nor was anything done with reference thereto by him, except making the arrangement and the entry on the bank books above mentioned. Neither the defendant nor his bank acquired title to or possession of a dollar by the transaction. It was purely a matter of bookkeeping, in which defendant obtained the entry of a credit for the bank in Stoner's account; or, to put it another way, induced Stoner to allow an entry of a charge against his account. In the early case of *State v. Moore*, 15 Iowa 412, this court held that ''To obtain an endorsement or credit upon a promissory note is not obtaining property, money or goods, within the meaning of the statute. No harm is done by such an act, for in the language of Mr. Bishop (Cr. Law 2, § 391) 'the credit is a mere intangible thing of no value.' '' *Reg. v. Eagleton*, 1 Jur. (N. S.) 940, 944, was decided likewise. In *Jamison v. State*, 37 Ark. 445 (40 Am. R. 103), the accused owed Thomson, who was indebted to Mattingley, and it was held that inducing the latter to credit Thomson the amount owing him did not constitute the offense charged of having obtained money. The same conclusion was reached where the receipt of a pre-existing account was procured to be executed. *Moore v. Commonwealth*, 8 Pa. St. 260. See for review of the authorities, *Bates v. State*, (Wis.) 103 N. W. 251.

The trouble with the case at bar is that neither title to nor possession of the money to be paid on the note passed to defendant or his bank, and therefore nothing was acquired

by defendant, even though he may have represented that he or the bank still held the note. The defendant should have been acquitted.—*Reversed*.

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.