STATE OF IOWA, Appellee, v. ADAM KIEFER, Appellant.

INDICTMENT AND INFORMATION:  Amendment—Proper Proce-
1   dure.  An authorized amendment of an indictment duly re-
turned by the grand jury should not be accomplished by the
filing by the county attorney of what amounts to an "Amended
and Substituted Indictment."  But where such was filed after
the court had authorized certain amendments, and the accused
was put on trial on the original indictment, and the court gave
no heed to the "Amended and Substituted Indictment," except
in so far as it embraced the amendments which the court had
authorized, *held*, the accused might not complain.  (Sec. 5289,
Code Supp., 1913.)

INDICTMENT AND INFORMATION:  Amendment—Surplusage—
2   Effect.  Any unauthorized allegation or change inserted by a
county attorney in a writing which is designed to effect an au-
thorized amendment to an indictment returned by the grand
jury is necessarily surplusage and without legal effect, and
must be ignored by the court.  So held where the county attor-
ney, in order to effect an authorized amendment to such an in-
dictment, assumed to redraw the indictment, and in addition
omitted the names of two of the defendants, who were not on
trial.

INDICTMENT AND INFORMATION:  Amendment—Service of
3   Copy on Accused—Waiver.  *Proposed* amendments to an indict-
ment returned by the grand jury should be drafted in the pre-

cise language which is to be employed when the accused is placed on trial, and these, or a copy thereof, must, in the absence of waiver, be served on the accused, preliminary to a ruling thereon by the court, authorizing or rejecting the same. (Sec. 5289, Code Supp., 1913.) Where the accused was served simply with a notice that application would be made to the court for an order authorizing certain amendments, which were designated in a general way, without pretense of setting forth the precise language of each amendment sought, and later, and at the hearing on the application, said amendments in precise form were embodied in a writing filed by the county attorney, and the accused appeared, and had his attention called by the court to the amendments, and objected thereto, *held*, accused had waived his right to a copy of the precise amendments sought.

INDICTMENT AND INFORMATION: Amendments—Scope—Names of Persons and Things. Names of persons and things appearing in an indictment may be changed by authorized amendments, so long as no new offense is charged. So held as to the name of a depositor in an insolvent bank, and as to the amounts of certificates of deposit given and received by him.

NAMES: Initials—Identity of Persons. In the substitution, by proper amendment, in an indictment, of the name Eugene S. Burr for E. S. Burr, it will be presumed that reference is made to one and the same person.

BANKS AND BANKING: Fraudulent Banking—"Renewals." The issuance by a bank of a certificate of deposit for the amount of a formerly issued certificate and interest due thereon, constitutes a "renewal" of such latter certificate, within the meaning of the Fraudulent Banking Act, Sec. 1884, Code, 1897.

EVIDENCE: Opinion Evidence—Impeaching Evidence. Opinion evidence on values may not be considered as impeaching evidence of former opinion evidence on values introduced by the same party.

BANKS AND BANKING: Fraudulent Banking—Individual Insolvency of Members of Partnership. To establish the insolvency of a partnership banking company, it is not necessary to establish the insolvency of the individual members of the partnership.

WEAVER and SALINGER, JJ., dissent.

APPEAL AND ERROR: Reservation of Grounds—Insufficiency. The general assertion in the trial court of the insufficiency of

the evidence to sustain a verdict is insufficient on appeal to raise the point that insolvency of the individual members of a partnership is necessary to sustain a verdict of guilt of fraudulent banking, there being no assignment of error on such point, and the same not being covered by a brief point.

WEAVER and SALINGER, JJ., dissent.

BANKS AND BANKING: Fraudulent Banking—Definition of Insolvency. Former holdings reaffirmed that a bank is insolvent, under the Fraudulent Banking Act, when its financial condition is such that it is unable to pay its debts as they mature, in the usual and ordinary course of business.

*Appeal from Buchanan District Court.*—H. B. BOIES, Judge.

JUNE 26, 1917.

REHEARING DENIED APRIL 2, 1918.

THE defendant, with W. H. and John Kiefer, was indicted September 24, 1913, for fraudulent banking, charging that:

"The said Adam Kiefer, W. H. Kiefer and John Kiefer on or about the 6th day of March, in the year of our Lord One Thousand Nine Hundred and Thirteen in the county aforesaid, did, being then and there engaged in the banking and deposit business under the name and style of Kiefer Brothers Banking Company, a copartnership, which copartnership then and there being insolvent, and well knowing said copartnership to be so insolvent, did knowingly accept and receive from one E. S. Burr a certain certificate of deposit issued by said Kiefer Brothers Banking Company for One Thousand Eight Hundred Dollars ($1,800.00) the property of said E. S. Burr and did then and there deliver to said E. S. Burr a new certificate of deposit issued by said Kiefer Brothers Banking Company for One Thousand Eight Hundred Dollars ($1,800.00) in return for the certificate of deposit delivered to them by said E. S. Burr, contrary to

and in violation of the form of the statute in such cases made and provided."

There was a plea of not guilty, and defendant alone was put on trial, September 22, 1915. E. S. Burr was called as a witness, and testified that his name was Eugene S. Burr; that Kiefer Bros. Banking Company operated a bank at Hazleton; that he had a certificate of deposit issued thereby; and that, in response to an inquiry as to whether he (defendant) wished the money longer, defendant said he did, and caused a certificate to issue therefor, in words following:

"KIEFER BROTHERS BANKING CO.

"Hazleton, Iowa, March 3, 1913.          No. 1499.

"Eugene S. Burr has deposited in this bank, eighteen hundred, fifty-eight & 75-100 dollars, $1,858.75, payable to the order of self or wife in current funds, on the return of this certificate properly endorsed.

"With interest at 4 per cent if left 3 months.

"With interest at X per cent if left X months.

"With interest at 5½ per cent if left 12 months.

"Interest to cease after 12 months.

"Adam Kiefer, Pt."

This was offered in evidence, but excluded, because not the certificate described in the indictment. Thereupon, the State moved for permission to amend the indictment:

"Comes now the state of Iowa, by R. W. Hasner, county attorney of Buchanan County, state of Iowa, and asks permission of the court to amend the indictment in the above entitled cause in the following particulars, to wit:

"First. That the name 'Eugene S. Burr' be substituted in all places in said indictment where the name 'E. S. Burr' now appears.

"Second. That the description of the certificate of deposit alleged to have been received and accepted by said Adam Kiefer from E. S. Burr be changed and corrected so

as to be for the amount when written of seventeen hundred sixty-one dollars and eighty-five cents ($1,761.85).

"Third. That the description of the certificate of deposit alleged in said indictment to have been issued to E. S. Burr on March 6, 1913, be changed and corrected so as to be for the amount of eighteen hundred fifty-eight dollars and seventy-five cents. And further, that said certificate of deposit was in the words and figures following, to wit:

" 'KIEFER BROTHERS' BANKING CO.

" 'Hazleton, Iowa, March 3, 1913.

" 'No. 1499.

" 'Eugene S. Burr has deposited in this bank, Eighteen Hundred Fifty-eight 75-100 Dollars ($1,858 75-100) payable to the order of self or wife in current funds, on the return of this certificate properly endorsed.

" 'With interest at 4 per cent if left 3 months.

" 'With interest at X per cent if left X months.

" 'With interest at 5½ per cent if left 12 months.

" 'Interest to cease after 12 months.

" 'Adam Kiefer, Pt.'

"Fourth. That said indictment be amended so that the words 'a more particular description of which ·is to the grand jury unknown' be inserted following the words 'the property of said E. S. Burr.' "

Notice in words following was served on defendant: "To Adam Kiefer:

"You are hereby notified that on September 27, 1915, at 4:30 o'clock P. M., the state of Iowa will present to the district court of Iowa, in and for Buchanan County, at the courthouse in the city of Independence, Buchanan County, Iowa, its application for permission to amend the indictment in the case of State of Iowa, Plaintiff, vs. Adam Kiefer, Defendant, it being case No. 13807 in said district court of Buchanan County, State of Iowa.

"You are hereby notified that you are required to appear

at said time and place and show cause, if any there is, why said permission to amend the said indictment should not be granted.

"You are further notified that a copy of the said motion or application to amend said indictment, setting forth the particular amendments asked for as herein stated, is hereto attached and marked 'Exhibit A.' [Signed by the county attorney.]"

Resistance was interposed by counsel for defendant on the grounds:

"1.   That the name Eugene S. Burr requested to be substituted for the name E. S. Burr is the name of a separate and distinct individual and relates to a separate and distinct offense and goes to the substance of the indictment to such an extent as to prejudice the substantial rights of the defendant, charging him with a different crime from that charged in the original indictment returned by the grand jury.

"2. That the description of the certificate of deposit alleged to have been received and accepted by the said Adam Kiefer from one E. S. Burr is in the original indictment set forth as $1,800.   That to change said description of the certificate of deposit upon which the indictment is based to the amount of $1,761.85 as suggested by the amendment to the indictment is to offer to introduce evidence of another and distinct offense prejudicial to the rights of the defendant and charging him with an entirely different crime from the one set forth in the original indictment, the original indictment indicating that the Kiefer Brothers Banking Company, a copartnership, received the sum of $1,800 from one E. S. Burr, while the amendment set forth charged the fact to be that one Adam Kiefer received from one Eugene S. Burr the sum of $1,761.85 as represented by the certificate of deposit, thus conclusively showing that the crime sought to be charged by the amendment has not any re-

lation to the state case that was passed upon by the grand jury in the original indictment.

"3.   That the description of the certificate of deposit alleged in the indictment to have been issued to E. S. Burr on March 6, 1913, was for the sum of $1,800, whereas, the certificate of deposit set forth in the amendment to the indictment is of the date of March 3, 1913, and issued to one Eugene S. Burr for $1,858.75, said last named certificate of deposit being payable to the order of said Eugene S. Burr and wife, the said new certificate of deposit mentioned in the notice to amend the indictment bearing no resemblance either in date, name of the person to whom issued, amount, or person to whom payable, to the one charged in the original indictment, such amendment being prejudicial to the substantial rights of the defendant and charging him with an entirely separate and distinct crime from that charged in the original indictment, returned by the grand jury.

"4.   That the so-called amendment to the indictment is in no respect an amendment to the original indictment but that the facts set forth therein constitute a separate and distinct crime entirely different from that charged by the grand jury in the original indictment.   That the names in the certificate of deposit alleged to have been received and accepted by the Kiefer Brothers Banking Company in the original indictment fail to correspond with the certificate of deposit alleged to have been received and accepted by one Adam Kiefer; that the description of the certificate of deposit alleged in the original indictment to have been issued to E. S. Burr corresponds neither in date, amount, name of the person to whom issued or name of the persons to whom the same would be paid with the original indictment as returned by the grand jury. That the grand jury of Buchanan County never passed on any such case as is now sought to be charged by the proposed amendment to the

original indictment and that to permit the same to be filed at this time would be to substitute the county attorney for the grand jury and would be to permit and allow the county attorney to substitute an entirely new indictment charging an entirely different crime from that charged in the original indictment returned by the grand jury.

"5. That the proposed amendment does not correct errors or omissions in the indictment as to matters of form or correct errors in the name of any person or in the description of any person or thing or in the allegations concerning the ownership of property described in the indictment, but that such proposed amendment substitutes an entirely new indictment for the original indictment as returned by the grand jury.

"6. That no copy of the proposed amendment has been served on the defendant.

"7. The amendment to the indictment is made and signed by a different county attorney from that named in the original indictment, conclusively showing that the county attorney who drew the amendment could have had no actual knowledge of the case presented to the grand jury and of the facts on which the original indictment signed a true bill by its foreman was based, and in presenting an entirely new case at this time, he usurps the functions of the grand jury and prejudices the rights of the defendant contrary to and in violation of law."

The resistance was overruled, and leave granted to amend the indictment. Thereupon, defendant moved for a continuance. This motion was overruled. The State then tendered the "amendment to the indictment," in words following:

"In the District Court of the State of Iowa, in and for Buchanan County, September Term, 1915. State of Iowa, Plaintiff, v. Adam Kiefer, Defendant. Amendment to Indictment.

"Comes now the State of Iowa by R. W. Hasner, county attorney of Buchanan County, Iowa, and having first had and obtained permission of the court, hereby amends the indictment in the above entitled case in accordance with the motion to amend said indictment heretofore filed in said case and the ruling of the court thereon, and hereto sets forth the amended indictment as follows, to wit:

" 'In the District Court of Iowa, in and for Buchanan County. The State of Iowa against Adam Kiefer. Indictment.

" 'The Grand Jury of the county of Buchanan, in the name and by the authority of the state of Iowa, accuses Adam Kiefer of the crime of fraudulent banking committed as follows: The said Adam Kiefer on or about the 6th day of March, in the year of our Lord, One Thousand Nine Hundred and Thirteen, in the county aforesaid did being then and there engaged in the banking and deposit business under the name and style of Kiefer Brothers' Banking Company, a copartnership, which copartnership then and there being insolvent and well knowing said copartnership to be so insolvent did knowingly accept and receive from one Eugene S. Burr a certain certificate of deposit issued by said Kiefer Brothers' Banking Company for Seventeen Hundred Sixty-one Dollars and Eighty-five Cents ($1,761.85) the property of said Eugene S. Burr, a more particular description of which is to the grand jury unknown, and did then and there deliver to said Eugene S. Burr a new certificate of deposit issued by said Kiefer Brothers' Banking Company for Eighteen Hundred Fifty-eight Dollars and Seventy-five Cents ($1,858.75) and in the words and figures, to wit:

" ' "Kiefer Brothers' Banking Co., Hazleton, Iowa, March 3, 1913. No. 1499.

" ' "Eugene S. Burr has deposited in this bank Eighteen Hundred Fifty-eight and 75-100 Dollars ($1,858.75), payable to the order of self or wife in current funds, on return of

this certificate properly endorsed. With interest at 4 per
cent if left 3 months. With interest at X per cent if left X
months. With interest at 5½ per cent if left 12 months.

"'"Adam Kiefer, Pt.

"'"In return for the certificate of deposit delivered to
them by said Eugene S. Burr, contrary to and in violation
of the form of the statute in such cases made and pro-
vided."'

"R. W. Hasner,
"County Attorney of Buchanan County, Iowa."

Counsel for defendant interposed the same objections
included in his resistance, and that "the proposed amend-
ment to the indictment does not correspond in any respect
with the notice served on the defendant, that the allegations
contained in the notice that was served on the defendant
and that it is proposed to substitute an entirely separate
and distinct indictment in place of the original indictment
and no copy of which was ever served upon defendant in
this case." Objection was overruled, and the amendment
allowed. The trial then proceeded, and resulted in the con-
viction of defendant. He appeals.—*Affirmed.*

*M. A. Smith* and *Chappell & Todd,* for appellant.

*George Cosson,* Attorney General, *John Fletcher,* As-
sistant Attorney General, *R. W. Hasner,* County Attorney,
and *E. E. Hasner,* for appellee.

LADD, J.—I. The defendant, with his two brothers, W.
H. and John Kiefer, is alleged in the indictment to have en-
gaged in the banking business as a copartnership, under the
name of Kiefer Brothers Banking Company.

1. INDICTMENT
AND INFOR-
MATION:
amendment:
proper proce-
dure.

It is also alleged that the company became
insolvent, and, while so insolvent, said de-
fendant "did knowingly accept and receive
from one E. S. Burr" a certificate of deposit, previously by

it issued, for $1,800, and issued to said Burr another certificate in its stead for $1,800. No copy of either instrument was attached thereto. It developed on the examination of E. S. Burr that his name was Eugene S. Burr; that the certificate issued was for $1,858.75, "payable to the order of self or wife," and was made to Eugene S. Burr. When offered in evidence, it was excluded, on the objection that it was not the certificate described in the indictment. Thereupon, the State applied for leave to amend that instrument, under Paragraphs 7 and 8, Section 5289, Code Supplement, 1913, which provides that:

"7. The county attorney may, at any time before or during the trial of defendant upon indictment, amend the indictment so as to correct errors or omissions therein as to matters of form, or to correct errors in the name of any person or in the description of any person or thing, or in the allegations concerning the ownership of property that may be described in the indictment; but such amendment shall not prejudice the substantial rights of the defendant, or charge him with a different crime or different degree of crime from that charged in the original indictment returned by the grand jury;

"8. A notice of the time the State will ask permission to file such amendment, together with a copy of such amendment, shall be served upon the defendant or his attorney and an opportunity be given the defendant to resist the filing of such amendment. No continuance or delay in trial shall be granted because of such amendment, except upon the defendant's application, it appearing to the court that defendant should have additional time to prepare for trial because of the new allegations contained in the indictment."

The application to amend proposed: (1) To "substitute" the name "Eugene S. Burr" in all places therein for E. S. Burr; (2) to "change and correct" the amount

in the certificate surrendered by inserting
$1,761.85, instead of $1,800, therein; and (3)
to change and correct the certificate issued,
by inserting $1,858.75 instead of $1,800; and
(4) to insert, after the words "the property
of the said E. S. Burr," the words, "a more particular description of which is to the grand jury unknown." Neither
the proposed amendment nor a copy thereof was attached,
nor was a copy of the alleged amendment ever served on the
defendant, but the application was duly served. Such
amendment was, in form and substance, a new and complete indictment, without endorsements as having been returned by the grand jury; and the State, while denominating it in the title, "amendment to indictment," states that
it "amends" in pursuance of permission of the court, and
"hereto sets forth the amended indictment." Then follows
the amendment, in the form of an indictment, containing not
only the changes sought, but enough else to make it apparently complete in itself. But the State was without authority to amend in any respect save that authorized by this
statute. There is no provision permitting the filing of an
amended and substituted indictment. Such an instrument
can only be returned by the grand jury upon resubmission
to that body. The State is limited by the order of the court,
on application, to precisely the changes or corrections therein permitted, and anything in excess thereof must be regarded as surplusage. Had the amendment been served
on the accused, as exacted by statute, and the same ruled on
by the court, it might cover every correction or change permissible thereunder. But only the motion was served and
ruled on by the court; and therefore the State, in drawing
the amendment, might not make other changes or corrections than authorized by the ruling thereon. Of course, it
is not often material how an amendment is denominated:
the important consideration is, what it really is. This

2. INDICTMENT
AND INFOR-
MATION:
amendment:
surplusage:
effect.

amendment in form is something more than a mere amend-ment; but, as said, anything other than within the order of the court was utterly without authority of law, and especially is this true of that part specifically charging the offense against him only. Doubtless the omission of the names of the other brothers from the amendment was due to oversight, owing to the fact that Adam Kiefer alone was on trial. The indictment was without defect in these respects. The law did not authorize an amendment in either respect, nor was it permitted by the court. Any matter included in the amendment by the county attorney other than permissible by statutes and authorized by court must be regarded as surplusage, as not being returned by the grand jury; and, as the trial court proceeded on this theory, and the cause was tried on the original indictment as corrected by the amendment only in the respects proposed, there was no error.

II.   In serving notice of the application to amend, a copy thereof also was served, but no copy of the amendment was ever served on the defendant. He specifically objected to the application on this ground: "(6) That no copy of the proposed amendment has been served on the defendant." In overruling this objection, the court denied the defendant the benefit of Paragraph 8 of Section 5289 of the Code Supplement, 1913. The right to amend an indictment returned by the grand jury, accorded the county attorney, was on certain specified conditions, among which was the service of a copy thereof on the accused. This was to advise him both of the substance and form of the proposed amendment, to the end that "an opportunity be given the defendant to resist the filing of such amendment." Undoubtedly, the court erred in overruling the objection that a copy of the amendment had not been served, but the error was waived by the fact that counsel

3. INDICTMENT
   AND INFOR-
   MATION:
   amendment:
   service of copy
   on accused:
   waiver.

for the defendant interposed objections to the amendment itself, when filed, and that his attention was directed thereto by the court, and he resisted the filing thereof. He could have done no more had the copy been served. Every purpose of such service had been accomplished, and we are of opinion that the error in the ruling of the court and the failure to serve a copy of the amendment on defendant were waived. In any event, he was in no wise prejudiced. We are required to "examine the record without regard to technical errors or defects which do not affect the substantial rights of the parties" (Section 5462, Code), and it is plain that this could have had no influence on the course of the trial.

III. Appellant contends that the amendment, in effect, substitutes different certificates from those described in the indictment, in that the application asks to "substitute" the name "Eugene S. Burr" for "E. S. Burr,"

4. INDICTMENT AND INFORMATION: amendments: scope: names of persons and things.

and to change and correct the amounts of said certificates. If the amendment charged the defendant with a different crime from that alleged in the indictment, leave to file it ought not to have been granted. We do not so construe the amendment. The statute quoted authorizes an amendment correcting (1) "errors or omissions therein as to matters of form," (2) "errors in the name of any person," (3) "in the description of any person or (4) thing, or (5) in the allegations concerning the ownership of property that may be described in the indictment." All this may be done provided the accused is not prejudiced in his substantial rights, and a different crime is not charged. The propriety of amendments in these respects, as well as the power of the general assembly to authorize them, was fully vindicated in *State v. Mullen,* 151 Iowa 392, and the granting of leave to amend was approved in *State v. Foxton,* 166 Iowa 181, and *State v. Kiefer,* 172 Iowa 306. It will be observed that the

matters enumerated relate to form, rather than to the substance of the charge; and whether the general assembly might authorize an amendment affecting the substance of the charge is not and could not well be involved in construing this statute. But see *State v. Mullen,* supra; *Jones v. McClaughry,* 169 Iowa 281.

(a) It is first objected that the amendment sought to "substitute" the name "Eugene S. Burr" instead of "E. S. Burr," and it is argued that this did not have the effect of correcting the name of the person to whom the certificates were issued, but of inserting the name of a different person. In the absence of any showing to the contrary, letters preceding the surname are to be treated as the Christian or given name; but this is not often so, for such letters ordinarily stand for full names. *Riley v. Litchfield,* 168 Iowa 187. And where the latter are substituted in the description of a particular instrument, it is not to be inferred that a different person was intended, but that the names for which the letters stood were intended to be stated. Such clearly was the design of the amendment, and it ought not to be construed as alleging a different person than named in the indictment. Especially should this be the rule where the evidence previously adduced conclusively proved, as here, that E. S. Burr and Eugene S. Burr was one and the same person.

5. NAMES: initials: identity of persons.

(b) The amendment changed the amount in both the certificate surrendered and that issued in lieu thereof. This was merely a correction of the description of these certificates. These were things described in the indictment, and the statute expressly authorizes correction of any error in the description of any "thing." The application to correct the description indicated that the amendment would relate to the same instrument as the indictment, and both, in fact, related to the same certificates. The corrections were permissible.

IV.   Section 1884 of the Code declares that:

"No bank, banking house, * * * deposit office, firm, * * * or person engaged in the banking * * * or deposit business, shall, when insolvent, accept or receive on deposit, with or without interest, * * * United States treasury notes or currency * * * or renew any certificate of deposit."

6. BANKS AND
BANKING:
fraudulent
banking: "re-
newals."

Code Section 1885 fixes the penalty.  The charge is that defendant, in behalf of the copartnership, when insolvent, renewed a certificate of deposit; and it is argued that neither the indictment alleged nor the evidence proved the commission of such offense.  This is on the theory that the issuance of a new certificate of deposit for the amount of a former certificate, including interest, upon the surrender of the former certificate, was not a renewal thereof, but an extension. Such is not the meaning ordinarily accorded to "renewal," when applied to such certificate or a promissory note.  Anderson's Dictionary of Law defines "renewal" as the "substitution of a new right or obligation for another of the same nature," and says further that it "is not a word of art; it has no legal or technical signification."   Bouvier defines it to be "A change of something old for something new." See *Sponhaur v. Malloy*, 21 Ind. App. 287 (52 N. E. 245), where a note given in taking up another was held to be a renewal; *Kollock v. Scribner*, 98 Wis. 104 (73 N. W. 776), where, in discussing what was required in the renewal of a lease, the court, speaking through Marshall, J., says:

"There is much respectable authority to the effect that the words 'renew' and 'extend' should be construed in accordance with their ordinary meaning.  Obviously, one means to prolong, or to lengthen out; the other, to make over, to re-establish, or to rebuild; and those courts and writers that have construed them accordingly certainly have the best of the argument, if the judicial construction is to follow the true definitions of the words.  We apprehend

that no one would seriously contend that an agreement to renew a note would be satisfied otherwise than by making a new note in place of the old one. It would seem that the construction adhered to in some jurisdictions, that to renew is equivalent to extend, violates the rules of language to reach a judicial construction out of harmony with the universally accepted meaning of the words, as defined by lexicographers. That was discussed in *Orton v. Noonan*, 27 Wis. 272, where the renewal covenant used the words 'extend the lease.' A careful reading of the two opinions filed in that case, one by Dixon, C. J., and one by Mr. Justice Cole, leaves no room for controversy but that, while they differed as to the meaning of the term 'to extend,' as applied to the lease then under consideration, they both held that an agreement to renew a lease called for a new one. Said the chief justice: 'The verb "to extend" implies far less than the verb "to renew." The one means to draw forth, to stretch, to prolong, to protract, to continue; the other, to make over, to make anew, to give new life to, to restore, re-create or rebuild.' "

See also *Gault v. McGrath*, 32 Pa. (8 Casey) 392, 397; *Carter v. Brooklyn Life Ins. Co.*, 110 N. Y. 15 (17 N. E. 396); *Kedey v. Petty*, 153 Ind. 179 (54 N. E. 798). We entertain no doubt that, in issuing the last certificate of deposit, defendant did *renew* the first certificate, in violation of the statute quoted.

V. The firm went into involuntary bankruptcy, shortly after the transaction in question, and, as required by law, filed schedules of its assets and liabilities. From these it appeared that the former were considerably in excess of the latter. Thereupon, the State called the trustee in bankruptcy, and, over objection, elicited from him what the market value of a large amount of the assets was, showing that the value of the whole was much less than the total

7. EVIDENCE: opinion evidence: impeaching evidence.

amount of the liabilities. Counsel for appellant argue that this testimony tended to impeach the schedules, and that the State might not impeach evidence introduced by it. But the evidence was not impeaching. The schedules were introduced as tending to prove the assets owned by the copartnership and the amount of its indebtedness, as bearing on its financial condition and defendant's knowledge thereof. Though values of the assets were estimated therein, these are mere matters of opinion; and that other witnesses might estimate differently does not render their testimony impeaching in character. Otherwise, a party, in proving value, might be precluded from proving a value different from that estimated by the first witness called. The objection was rightly overruled.

8. BANKS AND BANKING: fraudulent banking: individual insolvency of members of partnership.

VI. The evidence was such that the firm, as such, might have been found insolvent; but appellant says, in argument, that the individual members of the firm were not so shown, and that this was essential. Neither of these matters is involved in any of the errors assigned and said by appellant to be those relied on, nor is it covered by the brief points. Doubtless this accounts for no attention's being given to the subject by the State in its brief, for the rules exact that no point or proposition not found in the brief points shall be considered. Moreover,

9. APPEAL AND ERROR: reservation of grounds: insufficiency.

what is said is under the heading assailing the indictment, and seems to be in criticism of the failure of the amendment to allege who were members of the firm. Moreover, the point was not raised in the district court, save in the general assertion of the insufficiency of the evidence to sustain the verdict, and, not having been presented here as exacted, ordinarily would not be considered. That the point is not well taken probably accounts for its not being raised by appellant. Section 1884 of the Code, heretofore quoted,

prohibits a firm, when insolvent, from renewing a certificate of deposit, and thereby inferentially asserting its solvency. The next section declares that "any owner, officer, director, cashier, manager, member or person * * * who shall knowingly * * * renew any certificate of deposit, as aforesaid, shall be guilty of a felony." Section 1885, Code.

The evidence warranted a finding that the accused was a member of the banking firm, and that he issued the renewal certificate with knowledge that the copartnership was insolvent. To prove the firm insolvent, it was not necessary to show that its entire property was insufficient to meet its obligations, but that the said firm, in the operation of its bank, was not in a condition financially to pay its debts as these matured, in the usual and ordinary course of business. *State v. Cadwell*, 79 Iowa 432; *State v. Boomer*, 103 Iowa 106; *Toovey v. Ayrhart*, 136 Iowa 694.

10. BANKS AND BANKING: fraudulent banking: definition of insolvency.

In *Ellis v. State*, 138 Wis. 513 (119 N. W. 1110, 20 L. R. A. [N. S.] 444), the above definition, as found in *State v. Cadwell*, supra, is criticised, and a bank is said to be insolvent "when the fair cash value of its assets, realizable within a reasonable time, in case of liquidation by the proprietors, as ordinarily prudent persons would ordinarily close up their business, is not equivalent to its liabilities, exclusive of stock liabilities." The reasoning of the opinion seems to treat the banker as merely a debtor of the depositor, overlooking the implied representation to depositors, upon receiving deposits, that these may be withdrawn at any time, and the deceit involved in receiving money under these circumstances, with knowledge that it will be impossible to pay back the same in the ordinary course of business. Such an act is a palpable fraud, and the design of the statute is to punish anyone participating in the perpetration thereof. This view seems to have been entertained in *State v. Myers*, 54 Kan. 206. See also *State v. Darrah*, 152

Mo. 522 (54 S. W. 226) ; and *State v. Stevens,* 16 S. D. 309 (92 N. W. 420). In *State v. Clements,* 82 Minn. 434 (85 N. W. 229), cited in *Ellis v. State,* supra, both definitions of insolvency seem to have been included in an instruction, and it was approved without saying which was correct, on the theory that no prejudice could have resulted. We are not inclined to regard the reasoning of *Ellis v. State,* supra, with reference to the character of the offense, as persuasive. The rule of the Wisconsin court is that a deposit of money merely creates the relation of debtor and creditor. *Klauber v. Biggerstaff,* 47 Wis. 551 (3 N. W. 357). If making a deposit merely creates an indebtedness, it could not well be said that a different rule should be applied to the banker who becomes insolvent than to one engaged in any other occupation. The transaction of depositing money, is held, in this state, to differ essentially from a mere loan. A loan is for the benefit of the borrower, while a deposit is for the benefit of the depositor. The depositary may obtain an incidental advantage, but that is seldom the original object contemplated. In a loan, the borrower ordinarily promises to return the money at a future time; in a deposit, whenever the money is demanded. Although the technical relation of creditor and debtor arises from the making of deposits of money, people who daily leave money with the banks for safe-keeping, and exact the return of an equivalent amount, seldom, if ever, think of the transaction as a loan, or speak of it as such. In other words, the relation between banker and depositor partakes largely of confidence and trust. *Hunt v. Hopley,* 120 Iowa 695. See also *State v. McFetridge,* 84 Wis. 473 (20 L. R. A. 223) ; *Elliott v. Capital City State Bank,* 128 Iowa 275. If the debt of a bank, created by deposit, were that only, there would be ground for saying that the banker commits no greater wrong than other debtors in failing to repay, and the offense is no more than that of known inadequacy of the assets, on final distribution, to

pay the depositors in full, as seems to be the thought of
*Ellis v. State.* But, as the deposit is received primarily for
the benefit of the depositor, and this for safe-keeping, and
with the understanding that the same or any part thereof
will be repaid on demand, in the ordinary course of busi-
ness, or will be paid as checked out or withdrawn at short
intervals, as needed to meet the current demands of busi-
ness, or individual or family expenses, the banker, if he is
aware, in so receiving money, that he will be unable to re-
pay the same, as demanded or checked out in the ordinary
course of business, is not only practicing a deception in tak-
ing the money, but is embarrassing the depositor, often se-
riously, in his own affairs, by thus fraudulently appropriat-
ing his ready means and compelling him to await, therefore,
final liquidation of the bank's assets. The statute is so con-
strued in *State v. Cadwell,* supra, as to punish the wrong
thus perpetrated, and we are inclined to adhere to that de-
cision as sound in law, as well as in public policy. The con-
clusion necessarily follows, then, that whether the individual
members of the firm were or were not insolvent would have
no bearing upon the issue of whether the firm, as such, was
financially able to pay its debts as they matured, in the or-
dinary course of business. A partnership, under our stat-
ute, is a legal entity, known to and recognized by law. It
may sue and be sued, and it must have a residence. *Fitz-
gerald v. Grimmell,* 64 Iowa 261; *Ruthven v. Beckwith &
De Groat,* 84 Iowa 715; *Argus v. Ware & Leland,* 155 Iowa
583.

And such residence may be other than that of either
partner. A judgment against a partnership, as such, is not
a judgment against an individual member thereof. *Ander-
son v. Wilson,* 142 Iowa 158. Nor is it a lien on his prop-
erty. *Weaver v. Carpenter,* 42 Iowa 343. At page 422 of
30 Cyc., the law is thus stated:

"While it has been stated broadly that a partnership

is but a relation, and is not a legal being, distinct from the members who compose it, still the law does take note, on a wide scale, of partnership as a legal entity, and regards it as a unit of rights and obligations, and there is a general tendency at this day to complete the recognition of a partnership as a body of itself, with its own means appointed to its own debts."

The authorities cited sustain the text. The statute itself, Section 1884, Code, plainly segregates the partnership as a unit, as distinguished from individuals. If a legal entity, such as may sue and be sued, have a residence, and own property, to the exclusion of creditors of the members composing the firm until its own obligations are met, manifestly it may be insolvent, irrespective of whether its members are solvent or not. This rule prevailed in *Ransom v. Wardlaw & Co.*, 99 Ga. 540 (27 S. E. 158), where a partner tendered evidence that he was solvent and amply able to pay his own debts and those of the partnership against which there was a creditor's petition, alleging its insolvency; and the rejection of such evidence by the trial court was approved, and the court, after noticing the insistence "that a firm is not insolvent as long as either of its members is solvent, and that no creditor's petition will lie unless the firm is insolvent by reason of the insolvency of its members," ruled that "the court did not err in refusing to admit such evidence. Although the partners, as individuals, may be perfectly solvent, the firm as such, may be insolvent." *Drucker & Bro. v. Wellhouse & Sons*, 82 Ga. 135 (2 L. R. A. 328), was followed. A like holding will be found in *Menagh v. Whitwell*, 52 N. Y. 146 (11 Am. R. 683).

To establish the insolvency of Kiefer Brothers Banking Company, then, it was not necessary to prove the insolvency of its individual members. We are not saying that evidence of the financial condition of the several partners individually, and of the information of the accused with

respect thereto, might not have been shown, as bearing on the issue of whether any of those enumerated in Section 1885 of the Code knowingly received a deposit, or knowingly renewed a certificate of deposit, when the firm was insolvent. No evidence of this kind was adduced or tendered at the trial, and what we do hold is that the circumstance that the firm was insolvent, and that defendant, with this knowledge, renewed the certificate of deposit, warranted his conviction, even though no affirmative proof of the financial condition of the individual members of the firm was adduced by either party. The judgment is—*Affirmed*.

GAYNOR, C. J., EVANS, PRESTON, and STEVENS, JJ., concur.

SALINGER, J. (dissenting). I. The statute, Paragraphs 7 and 8 of Section 5289, Code Supplement, 1913, permits amendment "as to matters of form   *   *   *   in the name of any person or in the description of any person or thing, or in the allegations concerning the ownership   *   *   *" But it still prohibits charging "a different crime or different degree of crime." Without this statute permission, no change could be made. It follows none but such as are expressly permitted can be made. The amendment here changes the allegation of the original that Adam Kiefer, W. H. Kiefer, and John Kiefer committed the crime charged, to one that Adam Kiefer alone did. The statute does not authorize such changes. It is no answer that such change was not authorized by statute nor by the court, and is, therefore, surplusage. This reasoning would make it immaterial that the act was unauthorized. Indeed, under it, the more the change lacked authority, the less effective would complaint of the change be. As to lack of permission by the court, it suffices to say that the State was permitted to try defendant on the changed indictment.

II. The statute intends to punish, and the indictment charges, fraudulent banking. It is proved that whatever

was done was by a partnership composed of named individuals. There is evidence which tends to show the partnership received this deposit when it was insolvent. There is no evidence that either of the members were or are insolvent. It is presumed they were and are solvent. I am of opinion that, therefore, Adam Kiefer, one partner, may not rightfully be convicted. The failure to show the insolvency of the partners makes the same situation as if it were proved that they were solvent. If that be so, how was the depositor defrauded, even if the artificial entity, the partnership, was insolvent? The partners are liable for the deposit. If the liability differ at all, it is that possibly the partners cannot be made to pay unless the partnership fails to. I doubt whether this much is so, and think the partners and the partnership could have been sued jointly, or the partners sued and collected from first. Code Section 3468 provides that actions may be brought by and against a partnership as such, or against it and all or any of the members thereof, and a judgment against the firm as such may be enforced against the partnership property or that of such members as have appeared or been served with notice. A new action may be brought against the members not made parties, on the original cause of action. We held in *Hamsmith v. Espy*, 13 Iowa 439, that, where a judgment on a partnership debt is recovered against individual members of a firm, the sale of individual property thereunder will not be invalid, although an individual creditor might, by proceedings in equity, in a proper case, compel a resort to partnership property. According to *Schoonover v. Osborne*, 108 Iowa 453, at 454, one partner who buys out the other is thereafter to be dealt with as having all the rights and obligations of the partnership.

It is no answer that the statute contemplates prompt payment of the depositor, and that recourse to solvent partners might mean delay. A solvent partnership might delay

payment by neglect, arbitrary refusal to pay, or by captious litigation. But thus to delay would not constitute the crime here charged. To me it seems inconceivable that one partner can be guilty of violating the statute involved, when reimbursement of the deposit can surely be obtained. The argument that, on receipt of a deposit, there is an implied representation that it will be repaid on demand, does not impress me. One who gives a demand note for money received makes like representation. It would hardly be claimed that, on a charge that said note was accepted on a representation that the payor partnership was able to pay it, a conviction might be had, without evidence that the partners were unable to pay. I think the majority overlooks that a fraudulent intent is essential, and that, though the receiver does not draw nice distinctions between insolvency and bank insolvency, he would have no fraudulent intent if he believed, and it was the fact, that the depositor could not lose. Since this was written, the majority has made a change, in effect that evidence tending to show that the partners were solvent might be received, if offered in defense. This impels me to add: First, that this is inconsistent with what remains,—i. e., that such evidence is irrelevant and immaterial; and second, and as said already, there was such proffered here. For it is an inference of fact that the partners were solvent. This is the equal of testimony that they are solvent.

III. While it is not done scientifically, the point is raised. It is assigned to be error to overrule defendant's motion for a directed verdict, his motion for a new trial, and his motion in arrest of judgment. The motion to direct verdict asserts there is insufficient competent evidence to warrant conviction; that the record as a whole is insufficient to base conviction; and that, if verdict of guilty be rendered, the court would be compelled to set same aside, as without support in the competent evidence. The motion

for a new trial claims the competent evidence offered was insufficient to convict defendant of any crime. The motion in arrest declares the defendant is charged with a crime unknown to the laws of the state, and that, upon the whole record, no legal judgment can be pronounced. The argument squarely makes the point that the partners also must be proven to be bankrupts.

For the reasons stated, it is my opinion that the judgment of conviction should be set aside, and the case remanded for a new trial.

I am authorized to say that Mr. Justice Weaver joins in this dissent.