STATE OF IOWA, Appellant, v. W. H. NIEHAUS, Appellee.

No. 39407.

534

December 13, 1929.

· · *John Fletcher*, Attorney-general, *Neill Garrett*, Assistant Attorney-general, *Elmer F. Pieper*, County Attorney, and *Alex Holmes*, for appellant.

*William S. Hart*, *G. B. Richter*, and *W. W. Davidson*, for appellee.

ALBERT, C. J.—The defendant was president of the Citizens State Bank of Waukon, Iowa, which bank was incorporated under the laws of this state. This bank closed its doors on January

26, 1925, and a receiver was shortly thereafter appointed. One Clarence Evans was the owner and holder of a certificate of deposit issued by said bank in the sum of $800, dated January 12, 1924, and due in 12 months, at 4 per cent interest. When this certificate became due, or shortly thereafter, Evans went to the bank, and stated that he wished to leave the money there, as he was going to buy some cattle. He was then paid the interest on the certificate, amounting to $32. He later purchased some cattle from one Arnold, who was in some way connected with the bank. Evans went to the bank to pay Arnold, and this was done by the cancellation of the certificate of deposit for $800, the price of the cattle was credited to Arnold's account, and a new certificate of deposit issued to Evans, bearing date January 11, 1925, in the sum of $414.25, which certificate was a duplicate in form of the first certificate above described, except as to date and amount. The transaction in the bank was had with the defendant, Niehaus. At this point it might be well to note that the first ground of the motion to direct a verdict, which the court sustained, raised the question of whether this latter certificate was a renewal of the first, within the provisions of the statute.

Section 9279, Code, 1924, reads as follows:

"No bank, banking house, * * * or person engaged in the banking, * * * business, shall, when insolvent, * * * renew any certificate of deposit."

Section 9280 makes such conduct a felony.

The question is whether or not the facts recited,—if they are conceded to have occurred,—come within the provisions of the statute.

It is to be remembered that criminal statutes are to be strictly construed. The State relies for its contention on the case of *State v. Kiefer*, 183 Iowa 319. In that case, the facts show that the first certificate was for $1,761.85, with interest, and the second, issued to replace the first, was for $1,858.75. The latter certificate covered the first, plus the interest therein provided for. This case holds that, under such circumstances, the statute we are discussing applied; in other words, that the second certificate was a renewal of the first, within the meaning of the statute.

In the case at bar, however, we do not have this situation. The original certificate was for $800, plus the interest, and the interest was paid. Therefore, the amount due on the original certificate at the time in question was $800. Out of this amount was deducted the purchase price of the cattle, and a new certificate was issued for $414.75. This makes a wholly different situation from that existing in the *Kiefer* case. It is quite apparent on the face that the second certificate was not a renewal of the first.

In *Kedey v. Petty*, 153 Ind. 179 (54 N. E. 798), it is said:

"'Renewed' or 'renewal,' as applied to promissory notes, in commercial and legal parlance means something more than the substitution of another obligation for the old one. It means to re-establish a particular contract for another period of time. It means to restore to its former conditions. 'An obligation on which the time of payment has been extended.' * * * 'Imparting continued or new force and effect.'"

In *Lowry Nat. Bank v. Fickett*, 122 Ga. 489 (50 S. E. 396), the Georgia court said:

"As applied to promissory notes, the term 'renewal' has been held to mean 'the re-establishment of the particuar contract for another period of time.'"

In *Carter v. Brooklyn Life Ins. Co.*, 110 N. Y. 15 (17 N. E. 396), the New York court said:

"To renew, in its popular sense, is to refresh, revive, or rehabilitate an expiring or declining subject, but is not appropriate to describe the making of a new contract or the creation of a new existence."

The word "renewed," as indorsed on a note, may be considered as meaning "received the interest for a renewal," and may properly be regarded as an agreement to consider the note to be the same as if made in the same terms anew from that date. *Lime Rock Bank v. Mallett*, 34 Me. 547, 549 (56 Am. Dec. 673).

In *Holloway v. Schmidt*, 33 Misc. Rep. 747 (67 N. Y. Supp. 169), the court said, in substance, that a clause in a lease giving the lessee the "first privilege of a renewal" gives the prior right

to a lease upon terms the same as in the first lease, provided that the property is relet at the expiration of the first lease.

In *Leavitt v. Maykel*, 203 Mass. 506 (89 N. E. 1056), the Massachusetts court said that the word "renew" in a lease providing that the lessee shall have the right to renew the lease "imports a giving of a new lease like the old one, with the same terms, stipulations, and covenants * * *."

Webster's New International Dictionary defines "renew:"

"To make new again; to restore to freshness * * *; also, to restore to fullness or sufficiency; * * * to grant or obtain an extension of; to continue in force for a fresh period * * *."

It is apparent that, in the *Kiefer* case, supra, the situation came within any one or all of the foregoing definitions, and therefore that case was rightly decided. It is also quite apparent that the fact situation we have before us does not come within any one of these definitions, and it necessarily follows that the ruling of the court on this ground of the motion to direct a verdict was right.

The next ground of the motion to direct was that the evidence was wholly lacking to show that the bank was duly  incorporated. A copy of the articles of incorporation, under the certificate of the secretary of state, which was introduced in evidence, was sufficient. Sections 11296 to 11304, inclusive, of the Code of 1927.

The third ground of the motion was that the State failed to show that the defendant was an officer of the corporation; and fourth, that there is not sufficient evidence of insolvency: fifth, that there was not sufficient evidence as to knowledge of insolvency on the part of the defendant.

All of these grounds go to the question of the sufficiency of  the evidence to warrant the court in its action, and we have quite consistently held that, when the only question is the sufficiency of the evidence to support the court's action, we do not review the record.

Evidence of the witnesses McKenna, Frieburg, and Walter, John, and Ruby Bacon was introduced, tending to show that

 they made deposits on the day before or on the day on which the bank closed. This evidence was at least admissible for the purpose of showing that the bank was still a going concern and doing business.

The State complains of the striking of the evidence of the witness Kane, who was the examiner in charge of the bank under the receivership. Numerous exhibits in the nature of bills re-  ceivable were introduced in the case, numbered from 15 to 129. These exhibits were presented to Kane, who testified that over $78,000 of these notes were uncollectible at the time the bank closed, on January 26, 1925. On cross-examination, inquiry was made as to his personal knowledge of each one and all of these notes, what investigation he had made, and what knowledge he had as to the property owned by the makers thereof. His testimony, as developed on the cross-examination, in some instances did not show such a foundation for his opinion as the law required, but in other instances it did. The motion was to strike all of his testimony as to the value of these assets; and, so long as he qualified to express an opinion as to some of them, the motion should have been overruled. We have held, in substance, that an examiner in charge of a bank for the purpose of liquidation is qualified to testify as to the value of its assets, liabilities, etc. *State v. Easton,* 113 Iowa 516; *State v. Gregory,* 198 Iowa 316. We have also held that one with the necessary qualifications and the proper investigation of assets and liabilities of a bank may give his opinion as to its solvency. *State v. Cadwell,* 79 Iowa 432; *Lacy v. County of Kossuth,* 106 Iowa 16; *Campbell v. Park,* 128 Iowa 181; *State v. Kiefer,* supra; *State v. Gregory,* supra.

It is apparent, therefore, that Kane's testimony should not have been stricken.

The witness Davis, who had been sheriff of Allamakee County, and who was deputy sheriff at the time of the trial, after testifying that he had investigated the records, and knew from

 personal knowledge as to the makers of certain notes, where they lived, and what property they had, was not allowed to answer questions which called for such knowledge on his part as to the solvency of the makers of notes which were introduced in evidence, and which it was claimed was a part of the plaintiff's case showing insolvency. Likewise, when Kane, the examiner in charge of the bank, was asked as to the property holdings of certain of the makers of the notes, objections were sustained by the court. This was error.

The examiner in charge of the bank made an itemized statement from the books of the assets and liabilities, covering all of the property of the bank. Though he testified that the same was  a correct tabulation or summary made from the books, when it was offered in evidence, it was rejected. This was error. *State v. Cadwell,* supra, and *State v. Gregory,* supra. It is quite apparent that this must be the rule, because to introduce all the books of a bank and turn the same over to a jury inexperienced in handling matters of this kind would be worse than useless. It is only by gathering the showing made by the books into a short, concise, and concrete form that the matter is at all workable in the hands of a jury. In fact, in the present case, the books themselves were introduced, and this exhibit was simply a summary made therefrom by one who was familiar therewith, placing the same in a concrete form, so that the jury might understand what the books showed.

The witness Larsen testified that he was a member of the school board of Waukon, of which the defendant was also a member; that, on January 13, 1925, the defendant said to the board,  "You better not allow any bills; we won't have enough money to pay the teachers." The books of the bank showed, at the time, a deposit by the school corporation of $10,938.66, and the monthly pay roll of the teachers was about $3,000 to $3,500. This evidence was all stricken, on motion of the defendant. This was error. It amounted to an admission on the part of the defendant of an inability to pay in the usual and ordinary course of business, and a knowledge thereof on his part.

A witness by the name of Senneff testified that he had made

a deposit in the bank on the day in question of $45.60. The court refused to admit his bank book issued to him, showing this deposit, and on motion, struck from the record all of the evidence of the witness. This was error, as heretofore suggested; because, if for no other purpose, it was admissible to show that the bank was a going concern and doing business at the time.

Some other questions are discussed, but we do not care to further discuss the matters involved. We have pointed out the errors made by the court; but, the defendant having been acquitted, we cannot disturb the judgment of the court.—*Affirmed*.

STEVENS, DE GRAFF, MORLING, and KINDIG, JJ., concur.