STATE OF IOWA, Appellee, v. J. W. GREGORY, Appellant.

**INDICTMENT AND INFORMATION:** Waiver of Defect. The objection that an indictment omits a *material* allegation is waived if not raised by demurrer.

**BANKS AND BANKING:** Fraudulent Banking—Elements—Knowledge of Insolvency. "Knowledge of insolvency" is an essential element of the crime of receiving deposits while insolvent.

**BANKS AND BANKING:**   Fraudulent Banking—Evidence—Savings
3   **Deposits.**  Evidence is inadmissible, on the trial of an indictment for
fraudulent banking, tending to show a refusal to pay a savings
account, when it is made to appear that the 60-day notice of demand
for payment had not been given.

**BANKS AND BANKING:**   Fraudulent Banking—Insolvency—Expert
4   **Testimony.**  Expert testimony as to the solvency or insolvency of a
bank is admissible, including a written recapitulation by the wit-
ness of the items of assets and the values attached thereto.

**BANKS AND BANKING:**   Fraudulent Banking—Evidence—Ultimate
5   **Payment.**  Evidence tending to show that one charged with fraudu-
lent banking possessed assets which might *ultimately* pay his debts
is not admissible.

**TRIAL:**   Evidence—Objections—Waiver.  An error in allowing a wit-
6   ness, *over objection*, to testify to the contents of an exhibit, is waived
by allowing the exhibit to be received in evidence *without objection*.

**CRIMINAL LAW:**   New Trial—Matters Inhering in Verdict.  A juror
7   may not impeach his verdict by a showing that he voted for con-
viction on the assurance of other jurors that the defendant would
be granted a new trial.

*Appeal from Polk District Court.*—W. G. BONNER, Judge.

APRIL 1, 1924.

REHEARING DENIED JUNE 28, 1924.

DEFENDANT was tried on an indictment charging the crime
of fraudulent banking.  The jury found defendant guilty, and
he was sentenced to serve a term of one year in the jail of Polk
County, and pay a fine of $2,500.   Defendant appeals.—
*Affirmed.*

*Jensen & Connolly* and *John McLennan,* for appellant.

*Ben J. Gibson,* Attorney-general, for appellee.

ARTHUR, C. J.—I.   In 1917, defendant established a private
bank, known as the Cottage Grove Bank, located in the city of
Des Moines.  He conducted the bank until April 25, 1921, when

1. INDICTMENT
AND INFORMA-
TION: waiver of
defect.

he closed its' doors, and made a general assignment to one Clyde B. Fletcher. On November 4, 1921, defendant was indicted by the grand jury of Polk County, Iowa, for receiving deposits while insolvent. The indictment charged:

"The said J. W. Gregory, on or about the 23d day of April, 1921, in the county of Polk, in the state of Iowa, did willfully, unlawfully, and feloniously, while engaged in the banking, exchange, and deposit business, and while insolvent, accept and receive on deposit money, currency, and checks from one J. W. Weeks to the amount of $242.85."

There is no dispute about the acceptance of the particular deposit alleged in the indictment. The main issues involved in the case were: (1) Was defendant insolvent at the time of receiving said deposit; and (2) if defendant was insolvent, did he know of his insolvency at the time of accepting said deposit?

The State introduced testimony for the purpose of establishing that defendant was insolvent at the time said deposit was received, and that he knew of his insolvency. Defendant introduced evidence for the purpose of establishing the contrary of both propositions. There is no occasion to set forth the evidence produced on the trial, except as it may become necessary in connection with discussion of errors assigned by defendant on this appeal.

II. Appellant assigns errors upon which he relies for reversal, which we will consider.

The indictment does not allege knowledge of insolvency on the part of appellant. Said omission is the main proposition argued and relied on for reversal. It is contended by appellant

2. BANKS AND
BANKING: fraud-
ulent banking:
elements: knowl-
edge of insol-
vency.

that the indictment is fatally defective because of such omission, and that a conviction under same cannot stand. Several assignments of error are directed against the defective indictment. No attack on the indictment was made by demurrer or motion, before the trial began. The point was raised during the trial by apt objections to testimony offered by the State to prove knowledge of insolvency, and by motions to direct verdict in favor of defendant. The question is here presented in assign-

ments of error in overruling said objections to admission of evidence, overruling motions to direct verdict, and overruling motions in arrest of judgment and for a new trial.

The statutes defining the crime for which appellant was indicted, and providing the punishment, are Sections 1884 and 1885 of the Code. Section 1884 reads:

"No bank, banking house, exchange broker, deposit office, firm, company, corporation, or person engaged in the banking, brokerage, exchange or deposit business, shall, when insolvent, accept or receive on deposit, with or without interest, any money, bank bills or notes, United States treasury notes or currency, or other notes, bills, checks or drafts, or renew any certificate of deposit."

Section 1885 reads:

"If any such bank, banking house, exchange broker, deposit office, firm, company, corporation or person shall receive or accept on deposit any such deposits, as aforesaid, when insolvent, any owner, officer, director, cashier, manager, member or person knowing of such insolvency who shall knowingly receive or accept, be accessory, or permit, or connive at receiving or accepting on deposit therein, or thereby, any such deposits, or renew any certificate of deposit, as aforesaid, shall be guilty of a felony, and, upon conviction, shall be punished by a fine not exceeding ten thousand dollars, or by imprisonment in the penitentiary for a term of not more than ten years, or by imprisonment in the county jail not more than one year, or by both fine and imprisonment."

Counsel for appellant urge that knowledge of insolvency at the time of receiving a deposit is the gravamen of the offense, and insist that, since the indictment fails to charge knowledge of insolvency on the part of appellant, the indictment is fatally defective; that it charges no crime; and that no judgment on it can lawfully stand. Undoubtedly, knowledge of the accused banker of the insolvency of his bank is an essential element of the crime of receiving deposits while insolvent. Omission in the indictment to allege that appellant received the deposit in question, knowing of the insolvency of his bank, was failure to make a material allegation. It was incumbent on the State to prove

insolvency of the bank and appellant's knowledge that his bank was insolvent. *State v. Dunning,* 130 Iowa 678. However, as we said in *State v. Carter,* 182 Iowa 905:

"Proof of the defendant's consciousness or actual knowledge of his insolvency is almost necessarily circumstantial."

We have often held that an indictment must set out all of the essential elements of the crime charged, leaving nothing to intendment. Some cases so holding are: *State v. Perry,* 109 Iowa 353; *State v. Ashpole,* 127 Iowa 680; *State v. McKinney,* 130 Iowa 372; *State v. Von Kutzleben,* 136 Iowa 89. The indictment before us would have been, or should have been, held bad if its omission to allege knowledge of insolvency on the part of appellant had been challenged by demurrer. *State v. Briggs,* 68 Iowa 416. In the *Briggs* case, we said:

"The facts constituting the crime of which the defendant is accused must be stated in the indictment, and questions as to the sufficiency of the statement of facts can be raised by demurrer, and its sufficiency as a pleading must be determined from its averments."

But no demurrer was interposed to the indictment before us.

Code Section 5289, which states what an indictment must show, was amended by the thirty-third general assembly by adding thereto provision requiring that objections to indictments be waived if not made before the jury is sworn on the trial of the case. The provision as to waiver of objections is as follows:

"All objections to the indictment relating to matters of substance and form which might be raised by a plea in abatement shall be deemed waived if not raised by the defendant before the jury is sworn on the trial of the case." Section 5289, Paragraph 9, Code Supplement, 1913.

The expression "substance," used in the statute, unquestionably is referable to a material allegation in the indictment, such as the omitted allegation in the indictment before us: that is, that defendant had knowledge of the insolvency of his bank. "Substance" is defined in Webster's Dictionary:

"The essence; that which makes a thing what it is, or gives it its essential nature. Substance in this sense is always the

essence of an existent thing; it is essence plus existence; a real or determinate subject. * * * The most important element in any existence; the characteristic and essential components of anything; the main part.''

The above quoted amendment to Code Section 5289 has been before us for construction and application in *State v. Boggs,* 166 Iowa 452; *State v. Cooper,* 169 Iowa 571. In the *Boggs* case, there was a demurrer to the indictment, but we held that it ''was not sufficiently specific to raise the objection now urged as a defect in the indictment, and that, therefore, such objection is not now available to the defendant by a motion in arrest.'' In the *Cooper* case, attack on the sufficiency of the indictment was made in motion in arrest, and we said:

''We are of opinion that the objections now urged, if they have any merit, are such as that they should have been made before the swearing of the jury, and they were waived by not making a timely objection.''

Counsel for appellant urge that the motion in arrest of judgment should have been sustained, under the provisions of Code Section 5426, notwithstanding the provisions of Paragraph 9 of Section 5289, above quoted. Code Section 5426 gives two grounds for motion in arrest of judgment, as follows:

''1. Upon any ground which would have been ground of demurrer;

''2. When upon the whole record no legal judgment can be pronounced.''

We think it must be held that Section 5426 is modified by the later enactment of Paragraph 9 of Section 5289, relating to waiver of defects in an indictment. To hold otherwise would be to say that said Paragraph 9 means nothing. The State introduced evidence to show that appellant had knowledge of the insolvency of his bank at the time the deposit in question was received, and the court in instructions required the jury to find that appellant had knowledge of such insolvency, in order to convict. The court did not err in rulings on this question.

III. Appellant complains of permitting two witnesses to testify, over objections, regarding savings accounts which they had in the bank. These two witnesses testified that, on April

25, 1921, the day the bank closed, they sought to withdraw their deposits, and the bank refused to pay them. It developed on cross-examination that the bank had a rule requiring sixty days' notice for the withdrawal of savings accounts, and that such notice was not given. If it was error to admit said testimony, we think it was without prejudice to appellant.

3. BANKS AND BANKING: fraudulent banking: evidence: savings deposits.

IV. Appellant complains that the court erred in permitting witnesses C. W. Mesmer and Guy B. Brunk to give their opinions as to the value of the assets of the bank, and in permitting the introduction in evidence of a tabulated list of the assets of the bank, with their values, prepared by said witnesses. Assignments relating to the admission of this evidence are without merit. The record shows that the witnesses properly qualified as experts to express opinions as to the values of the property inquired about. The exhibit introduced in evidence was a recapitulation of the values of the property of the bank as made by said witnesses, as experts, and was properly admitted in evidence.

4. BANKS AND BANKING: fraudulent banking: insolvency: expert testimony.

It is also complained that the court erred in permitting witness Clyde B. Fletcher to give his opinion as to the solvency or insolvency of the bank on April 23, 1921. This witness was the assignee of defendant. He had possession of all of the books of the institution, had liquidated, or was in the process of liquidating the assets, had made a complete examination and study of the assets and liabilities of the bank, and was qualified as an expert to give his opinion as to the solvency or insolvency of the institution. Admission of his testimony was not error. Opinin evidence is admissible to show the solvency or insolvency and value of the assets. *State v. Easton*, 113 Iowa 516; *State v. Kiefer*, 183 Iowa 319.

V. Appellant testified that he was expecting to receive $25,000 from a man by the name of Wessels, with whom he was negotiating to become interested in the bank; that he expected

to receive said money on April 25th, but did
not get any part of it. Appellant complains that
he was not permitted to testify that he had re-
ceived assurance from Wessels or Mr. Tennant
(agent of Wessels) that the $25,000 would be forthcoming. It
is also complained that it was error not to permit appellant to
testify as to whether or not he had received assurances as to the
liability of one Anna Murrow on a certain $500 note which the
bank held. It was not error to exclude said offered testimony.
*State v. Carter,* supra.

5. BANKS AND
BANKING: fraud-
ulent banking:
evidence: ulti-
mate payment.

VI. A. L. Hammarstedt, assistant cashier of the Iowa Loan
& Trust Company of Des Moines, called by the State in rebuttal,
testified that he had charge of the transactions of his bank and
the records of dealings with correspondent
banks. Witness was interrogated concerning
transactions between his bank and defendant's
bank, Cottage Grove Bank, concerning the indebtedness of said
Cottage Grove Bank to his bank. Witness testified, no objec-
tion being interposed, that, on April 22, 1921, the indebtedness
of the Cottage Grove Bank was about $6,000 or $6,500, secured
by notes and $5,300 worth of United States Liberty bonds. Wit-
ness then produced Exhibit CC, and stated that it was the "lia-
bility card of the Cottage Grove Bank, kept from day to day,
and is a part of our bank files in my department;" that, accord-
ing to the card, Exhibit CC, the indebtedness of the Cottage
Grove Bank to his bank on April 21, 1921, was $6,425. Witness
was then permitted to explain certain transactions appearing on
the exhibit, over objection that the witness had not shown him-
self qualified, and that his only knowledge of the transactions
inquired of was obtained from the card, Exhibit CC, which was
not an original entry, and which was not made by the witness.
The testimony of the witness in explanation of items shown on
Exhibit CC was, in substance, that the bank had held a note
signed by the Cottage Grove Bank, for $2,125, to which United
States bonds in the amount of $2,500 had been pledged as col-
lateral by the Cottage Grove Bank; that said note had been paid
on April 22, 1921. Concerning another item, witness testified
that a note of $1,350 had been held on March 10, 1921, for

6. TRIAL: evi-
dence: objec-
tions: waiver.

which $1,600 of United States bonds had been given as col-
lateral; that said note of $1,350 had been paid on April 22, 1921.
Concerning another item appearing on the exhibit, witness testi-
fied that his bank had held a note for $1,000, signed by the Cot-
tage Grove Bank, to which $1,200 in Liberty bonds had been
given as collateral, and that said $1,000 had been paid on April
22, 1921. Witness testified that he could not tell from the ex-
hibit how said above mentioned three notes had been paid, and
that he did not remember the transactions. Witness further
testified, with no objections made, that, according to the records
of his bank on April 24, 1921, at the end of that day's business,
the indebtedness of the Cottage Grove Bank to his bank was
$1,950.

Counsel for defendant then moved to strike all the testi-
mony of the witness on the grounds that it was incompetent,
hearsay, and not the best evidence. The motion was overruled.

Exhibit CC was then introduced in evidence by the State.
The record does not disclose that any objection was made to the
introduction of same. The exhibit is not set out in the abstract.
Nothing appearing to the contrary, and the witness having said
that his testimony was based on the exhibit, we assume that the
testimony and the disclosures of the card were substantially the
same; and, the exhibit having been received in evidence without
objection, it was not error to overrule the motion to strike the
testimony of the witness.

It is argued by counsel for defendant that there was dispute
as to whether or not the bonds mentioned by the witness were
pledged as collateral or were free and were available to defend-
ant as an asset on April 23, 1921. Defendant offered no testi-
mony challenging the correctness of the transactions between the
two banks testified to by Hammarstedt. We think defendant
waived any error there may have been in receiving the testimony
of Hammarstedt, by permitting the exhibit from which he tes-
tified to be introduced without objection. In any event, we
think there was no error prejudicial to defendant.

VII. Appellant urges that a new trial should have been
granted, and that it was error to overrule the motion for a new
trial because of misconduct of the jury. The misconduct com-

7. CRIMINAL LAW: plained of is set forth in an affidavit by one of
new trial: mat-
ters inhering in  the jurors, in which she says, in substance, that
verdict.          it was stated in the jury room by members of
the jury that "defendant would be entitled to and would re-
ceive a new trial on account of the defect in the indictment, re-
gardless of the verdict that the jury might bring in, and that
our deliberations were a waste of time;" that she did not know
whence the information came, but that she believed the defend-
ant not guilty of the crime charged, and she was holding out for
a verdict of acquittal, and changed her vote; that she would
have continued to vote "not guilty" if she had not believed in
and relied upon the statements that the defendant would receive
a new trial.

It was not error to overrule the motion for a new trial on
said ground. The deliberations of the jury, their conclusions
and reasons, inhere in the verdict, and a juror cannot be heard
to impeach the verdict on any such ground.

We have carefully examined the record. That the bank was
insolvent, cannot seriously be questioned. We think that a fair
consideration of the evidence shows the assets of the bank to
have been somewhere around $30,000. The deposits of the bank
were about $65,000. We think the conclusion is inescapable,
from the evidence, that appellant knew that his bank was in-
solvent. We think the defendant was accorded a fair trial.
We find no error in the record which would warrant disturbing
the verdict of the jury and the judgment of the trial court.
Accordingly, the case is affirmed.—*Affirmed.*

STEVENS, DE GRAFF, and VERMILION, JJ., concur.