STATE OF IOWA, Appellee, v. J. O. OSTBY, Appellant.

INDICTMENT AND INFORMATION: Sufficiency—Waiver of Matters of Substance. The fact that an indictment fails to charge an offense, because of the absence of an essential allegation, may not be presented by way of objection to evidence. (See Book of Anno., Vol. 1, Sec. 13791.)

INDICTMENT AND INFORMATION: Constitutional Law—Prosecution Under Trial Information. The fifth amendment to the Federal Constitution (requiring infamous crimes to be presented by indict-

ment) is no limitation upon the power of the *state* to provide for prosecution of infamous crimes without an indictment by a grand jury.

CRIMINAL LAW: Venue—Venue Provable by Inference. Venue does not necessarily have to be established by direct evidence. It may be inferred from testimony properly before the jury. (See Book of Anno., Vol. 1, Sec. 13449, Anno. 15 *et seq.*)

BANKS AND BANKING: Deposits—Fraudulent Receipt—"Deposit" Defined. The act of a drawee-bank in charging the amount of a check to the drawer's existing money deposit and in crediting the payee's deposit in the same bank with a like amount constitutes a *deposit*, within the meaning of the statute which prohibits the receipt of deposits by an insolvent bank. (Sec. 9279, Code of 1924.)

BANKS AND BANKING: Fraudulent Banking—Insolvency—Evidence —Other Deposits. Upon a prosecution for receiving deposits while insolvent, testimony of deposits other than that alleged in the indictment is admissible, over the objection of incompetency, irrelevancy, immateriality, and failure to lay proper foundation.

CRIMINAL LAW: New Trial—Belated Objections to Evidence. A party may not, on a motion for a new trial, interpose objections to testimony, other than the objections interposed at the trial. (See Book of Anno., Vol. 1, Sec. 11537, Anno. 9 *et seq.*)

Headnote 1: 31 C. J. pp. 793, 823. Headnote 2: 12 C. J. p. 1205; 31 C. J. p. 566. Headnote 3: 16 C. J. p. 769. Headnote 4: 7 C. J. pp. 580, 635, 730. Headnote 5: 7 C. J. p. 584. Headnote 6: 16 C. J. p. 1146.

Headnote 4: 3 R. C. L. 517. Headnote 6: 20 R. C. L. 267.

*Appeal from Hancock District Court.*—H. M. KEPLER, Judge.

NOVEMBER 23, 1926.

OPINION ON REHEARING MARCH 12, 1927.

Defendant was indicted for the crime of fraudulent banking. He entered a plea of not guilty, and upon trial was convicted. He appeals.—*Affirmed.*

*Chester L. Nichols, Oliver Gordon, T. J. Enright,* and *J. E. Williams,* for appellant.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, *John A. Senneff,* and *Verne C. Grau,* for appellee.

FAVILLE, J.—Appellant was the sole owner of an unorganized bank, which he operated under the name and style of the Farmers & Merchants Bank of Miller. On the 15th of March, 1924, he was indicted by the grand jury of Hancock County, charged with the crime of fraudulent banking, the particular charge being that, on or about the 24th day of January, 1924, he received from one Anderson a deposit in the sum of $12.12, at a time when the said bank and the said appellant were insolvent, and when appellant knew said bank to be insolvent.

I. When the first witness for the State was called, and after testimony preliminary in character had been given, the appellant interposed the following objection:

"At this time of the first reference to this bank of Miller, I desire to object to any further testimony in this case, on the ground that the indictment does not state a public offense,—does not state, as I understand it, those essentials which go to make up the charge of fraudulent banking, within the meaning of the Iowa statute."

At the close of all of the testimony, the appellant moved the court to instruct the jury to return a verdict of not guilty, among other things, "upon the ground and for the reason that

1. INDICTMENT AND INFORMATION: sufficiency: waiver of matters of substance.

the indictment upon which this transaction is based does not state a public offense." The same question was raised by the motion for new trial. In argument, appellant contends that the indictment was fatally defective "because it does not state that the defendant knew that he himself was insolvent at the time said deposit was received."

Even if the indictment was defective in this regard, the objection thereto is not available to the appellant, upon the record made. We had a similar question before us in *State v. Gregory*, 198 Iowa 316. In that case the indictment was for fraudulent banking, and failed to allege knowledge of insolvency on the part of the defendant. It was contended that the indictment was fatally defective because of such omission. No attack on the indictment was made by demurrer or motion before the trial began, and, as in the instant case, the point was raised during the trial, by objections to testimony offered by the State and by motion to direct a verdict. We held that omission in the indictment to allege that the defendant received the deposit knowing

of the insolvency of the bank was failure to make a material allegation therein. Paragraph 9 of Section 5289, Code Supplement, 1913 (Code of 1924, Section 13791), ·was in force at the time this indictment was returned. Said provision is as follows:

"All objections to the indictment relating to matters of substance and form which might be raised by a plea in abatement shall be deemed waived if not raised by the defendant before the jury is sworn on the trial of the case."

This section was also in force at the time of the decision in *State v. Gregory*, supra. In considering the same, we said:

"The expression 'substance,' used in the statute, unquestionably is referable to a material allegation in the indictment, such as the omitted allegation in the indictment before us: that is, that defendant had knowledge of the insolvency of his bank. 'Substance' is defined in Webster's Dictionary: 'The essence; that which makes a thing what it is, or gives it its essential nature. Substance in this sense is always the essence of an existent thing; it is essence plus existence; a real or determinate subject. * * * The most important element in any existence; the characteristic and essential components of anything; the main part.' The above quoted amendment to Code Section 5289 has been before us for construction and application in *State v. Boggs*, 166 Iowa 452; *State v. Cooper*, 169 Iowa 571. · In the *Boggs* case, there was a demurrer to the indictment, but we held that it 'was not sufficiently specific to raise the objection now urged as a defect in the indictment, and that, therefore, such objection is not now available to the defendant by a motion in arrest.' In the *Cooper* case, attack on the sufficiency of the indictment was made in motion to arrest, and we said: 'We are of the opinion that the objections now urged, if they have any merit, are such as that they should have been made before the swearing of the jury, and· they were waived by not making a timely objection.' Counsel for appellant urge that the motion in arrest of judgment should have been sustained, under the provisions of Code Section 5426,· notwithstanding the provisions of Paragraph 9 of Section 5289, above quoted. Code Section 5426 gives two grounds for motion in arrest of judgment, as follows: '1. Upon any ground which would have been ground of demurrer; 2. When upon the whole record no legal judgment can be pronounced.' We think it must be held that Section 5426 is modified by the later enact-

ment of Paragraph 9 of Section 5289, relating to waiver of defects in an indictment. To hold otherwise would be to say that said Paragraph 9 means nothing. The State introduced evidence to show that appellant had knowledge of the insolvency of his bank at the time the deposit in question was received, and the court in instructions required the jury to find that appellant had knowledge of such insolvency, in order to convict. The court did not err in rulings on this question."

The foregoing is a complete answer to appellant's contention at this point.

The appellant contends that said section of the statute is in violation of the Fifth Amendment to the Federal Constitution. The Fifth Amendment is as follows:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

In *State v. Wells*, 46 Iowa 662, we said:

"It is insisted that the ordinance is in conflict with Article 5 of the amendments of the Constitution of the United States, which provides that 'no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury.' It is sufficient to say, upon this point, that this provision of the Federal Constitution is applicable alone to the exercise of power by the United States, and is not a restriction upon the legislative authority of the States. *Barron v. Mayor and City of Baltimore*, 7 Pet. 243."

2. INDICTMENT AND INFORMATION: constitutional law: prosecution under trial information.

The Fifth Amendment of the Federal Constitution is no limitation upon the power of the state to provide for prosecutions for infamous crimes without an indictment by a grand jury.

An amendment to the Constitution of the state, adopted in 1884, provides:

"The grand jury may consist of any number of members not less than five, nor more than fifteen, as the general assembly may by law provide, or the general assembly may provide for holding persons to answer for any criminal offense without the intervention of a grand jury."

The general assembly has provided for holding persons to answer for a criminal offense without the intervention of a grand jury, by county attorney's information.

Section 13791, Code of 1924, is not affected by the Fifth Amendment to the Federal Constitution, and does not violate any of the provisions of the Constitution of this state.

II. It is contended by the appellant that the venue of the crime was not proven. It was charged in the indictment that
3. CRIMINAL LAW: the offense was committed in the town of Miller, venue: venue provable by county of Hancock, and state of Iowa. It was inference. abundantly established that the bank was located in the town of Miller. The witness Suhumski testified:

"Have lived in Miller about 4 years; in this county about 56 years. I've known Ostby since he came to Miller."

The witness Anderson testified:

"I am three miles west of Miller, on a farm; have lived in this county, more or less, all my life. I am a farmer. Miller is not an incorporated town, that I know of; has less than 100 population. There is just one elevator there, a company concern. There has been one store, and was another, some time ago, and there is a post office there. Miller was my trading point principally."

The witness Halverson testified:

"I live two miles south and east of Miller, in Ellington Township, Hancock County."

The case is ruled by our recent holding in *State v. Caskey*, 200 Iowa 1397, wherein, after reviewing our previous holdings, we said:

"We have also determined that venue may be proven by inference, as well as by direct assertion by the witness. *State v. Meyer*, supra [135 Iowa 507]. In other words, a sum total of these holdings is that the witness need not testify in words that the crime was committed within the county in question, but that such fact, if fairly inferable from the testimony given, is sufficient to carry the question of venue to the jury."

The evidence quoted, together with other testimony in the case, was sufficient to take to the jury the question of venue.

III. Appellant contends that the transaction charged in the indictment did not constitute a deposit, within the meaning of the statute. It appears that there was an unincorporated associ-

4. BANKS AND BANKING: deposits: fraudulent receipt: "deposit" defined. ation of individuals at Miller, which operated under the name of the Miller Shipping Association, and carried an account in the bank owned and operated by the appellant, under said name.
The witness C. O. Anderson was the manager of the said Miller Shipping Association. He carried a personal account in said bank. Both of the accounts were subject to check. C. O. Anderson, as manager of the Miller Shipping Association, was the person authorized to draw checks upon the account of the said Miller Shipping Association. On January 24, 1924, Anderson drew a check on said bank, payable to himself, in the sum of $12.12. The check recited that same was in payment of manager's fee, and was signed by C. O. Anderson, manager. Anderson indorsed his name on the back of said check, and presented it to the appellant at his bank. The check was stamped "Paid" by the appellant, and Anderson was given credit for said $12.12 on his checking account in said bank, and a deposit slip therefor was made out at said time.

The question at this point is whether this transaction constituted a deposit, within the meaning of the statute. Section 1884 of the Code of 1897 (Code of 1924, Section 9279), under which this action was prosecuted, is as follows:

"No bank, banking house, exchange broker, deposit office, firm, company, corporation, or person engaged in the banking, brokerage, exchange or deposit business, shall, when insolvent, accept or receive on deposit, with or without interest, any money, bank bills or notes, United States treasury notes or currency, or other notes, bills, checks or drafts, or renew any certificate of deposit."

At the time of the transaction, the Miller Shipping Association had on deposit in said bank, subject to said check, a sum in excess of the amount of said check. It fairly appears from the record that the amount of said check was charged to the Miller Shipping Association. At the same time, the account of the said C. O. Anderson was credited with the said sum of $12.12 as a deposit. Said amount was thereupon immediately subject to being checked out by Anderson. It is contended that by this transaction the funds in the bank were not augmented to any extent; that the transaction was a mere matter of bookkeeping;

and that the bank did not "receive on deposit" any money, check, or other thing, within the purview of the statute.

A similar question to the one here presented was before the Supreme Court of the state of Wisconsin in *Ellis v. State*, 138 Wis. 513 (119 N. W. 1110). The statute of that state (Section 4541, Wis. Stat. 1898) prohibits receiving "on deposit * * * any bills * * * or * * * bank checks" when the bank is insolvent. The offense charged was the receiving of a check, for which credit was given in the bank. The court said:

"The fact that the deposit relied upon in the second count in the indictment was a check does not militate against its satisfying the call of Sec. 4541, Stat. (1898), for a deposit of money. True, the check, as it went over the counter, was not money, but it was treated as such between the bank and its customer. It was taken as the equivalent of money at the face value. The money equivalent was placed to the credit of the depositor, the same, in all respects, as if legal tender money had been passed over the counter. The relation of debtor and creditor, as between the bank and the depositor, with the characterization of liability on the one side and expectancy on the other as to payment on demand at any time during banking hours, was created. In short, the transaction, in practical effect, was the same as if the bank had passed to its customer $1,000 for the check and he had immediately passed the same back for deposit and received credit therefor."

The mere fact that Anderson presented for deposit a check drawn on funds in the appellant's bank does not render the transaction any the less a deposit than if the check so presented by Anderson had been drawn on some other bank. Of course, if the check had been worthless, a different question would be presented. The statute, by its terms, prohibits receiving on deposit any "checks." That is precisely what the appellant did in this case; he received on deposit to the account of Anderson a check which it was shown by the record was a valid instrument, and drawn against an existing fund. The amount so deposited was immediately available to Anderson to withdraw by check. In legal effect, so far as this statute is concerned, the situation is the same as if Anderson had presented the check of the Miller Shipping Association to the bank and had received payment thereon in cash, and had immediately deposited the cash in his

own name in the bank. The amount of money in the bank would not have been augmented or changed; the transaction could, in a way, be said to be ''a mere matter of bookkeeping;'' but it would clearly be the receipt of a deposit. We hold that the transaction in question constituted a deposit, within the meaning of the statute.

IV. The appellant claims that the court erred in admitting testimony with regard to deposits made in appellant's bank by the witnesses Nesbit, Anderson, and Olson. The witness Nesbit identified without objection Exhibit 25, which was a statement of the bank that was mailed to him about the fore part of February, 1924. The offer of said exhibit in evidence was objected to as ''incompetent, irrelevant, and immaterial; no proper foundation laid.'' This objection was overruled. The witness Olson testified that he carried an account at the bank. Without any objection, he testified that, on the 28th day of January, 1924, he deposited in the bank $104.79. The abstract tends to show that the State offered in evidence Exhibit 40, a duplicate deposit slip of Olson's, showing the deposit of $104.79, dated January 28, 1924. The objection to the offer of this exhibit was that it was ''incompetent, irrelevant, and immaterial, no proper foundation laid, and not sufficiently identified.'' The witness Anderson was asked: ''When did you make your last deposit in your personal account in the bank, Mr. Anderson?'' He answered: ''January 28, 1924, $200.'' The witness identified a statement with the bank as Exhibit 28, and the State offered the same in evidence. It was objected to as ''incompetent, irrelevant, and immaterial; no proper foundation laid.''

The foregoing comprises the entire record in regard to said subject. The objections in each instance are lodged only against the admissibility in evidence of the bank's statement of account with the witness. The statements offered were admissible in evidence, if for no other purpose than to show, in the nature of an admission, the amount that the bank was owing at the time. There was no error here.

In the motion for a new trial, the appellant charged error in the receipt of the testimony of other witnesses than the three above named, respecting deposits made by them in the bank. We have examined the record with regard to the testimony of

<div style="margin-left:2em">

5. BANKS AND BANKING: fraudulent banking: insolvency: evidence: other deposits.

</div>

each of said witnesses, and find that no objections whatever were interposed to the testimony of the witnesses, the only objections made being the same as above, to the offer in evidence of a bank statement delivered to the witness, and this upon the general grounds stated.

Upon this record, we cannot sustain the errors now urged, and we make no pronouncement as to the admissibility of the evidence.    There was no motion to strike the testimony, and it

6. CRIMINAL LAW: was allowed to go to the jury unchallenged.
new trial: be- True, the appellant raised objections to the ad-
lated objections
to evidence.   missibility of the evidence in the motion for new trial, for the first time. It was then too late, even if the objection had been well taken. A party cannot sit by and permit improper testimony to be introduced in a case without objection, and then, in the event of an adverse verdict, predicate error thereon as a ground for new trial or for reversal in this court. This would be, in effect, gambling on the result of a verdict, which cannot be tolerated. Appellant cites us to cases holding that the defendant in a criminal case cannot waive a jury and submit to trial by the court alone, and that such waiver gives the court no jurisdiction to try the case without the aid of a jury. The cases do not reach the question here involved. Appellant relies on *State v. Potter*, 28 Iowa 554. In that case the challenge was to the sufficiency of the indictment to charge a crime. No objections to the sufficiency of the indictment were urged in the court below, and we held that the rule did not apply where the indictment failed to state a cause of action, and referred to the statute then in existence, Revision of 1860, Section 4925, which required us to examine the whole record, and, without regard to technical errors, render such judgment as the law demands. Said case was decided before the statute now in vogue, requiring objections to the form or substance of the indictment to be made before trial. Section 14010, Code of 1924, provides:

"If the appeal is taken by the defendant, the Supreme Court must examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands."

We have had occasion to review this statute in many cases. The statute has not been applied to a case where a defendant

waived objections to incompetent and improper testimony, by silence or otherwise. *State v. Conroy*, 126 Iowa 472; *State v. Gibson*, 189 Iowa 1212; *State v. Hathaway*, 100 Iowa 225; *State v. Schwab*, 112 Iowa 666; *State v. Finley*, 147 Iowa 563; *State v. Higgins*, 192 Iowa 201.

The argument of the appellant is presented with slight regard for the rules of this court as to the manner of its preparation. This is without excuse. We have, however, examined the same with care, with reference to all matters therein urged upon our attention. We find no error in the record requiring reversal of said cause, and the judgment appealed from must therefore be, and it is,—*Affirmed.*

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.